Thank you, Your Honor. Good afternoon, Jason Levin. For the plaintiff appellants, we've been referring to as passages. Passages, as you know, operates a drug addiction treatment facility in Malibu, and it and its competitor, the defendants, have a similar drug addiction treatment facility called Cliffside. As between passages and Cliffside, the parties had four claims for false advertising under the Lanham Act. All four went to the jury, and all four were decided in passages favor. Passages appeal focuses on the first jury question, and the jury question that we're focusing on has to do with the passages review page. Of a website called The Fix. And in the first jury finding, the jury found that the passages review page on its own by itself was false advertising. Now, defendants have made. I did that first question is false about this review. The falsity in the first finding was that the passages review page indicates and suggests that the information on the page was based upon customer surveys. When the review says one reason alone or a third resident claims those were false because they were made up. Is that separate? You're saying that that first finding is that is part of it. Your Honor. The more important part from passages point of view or the star ratings. We know from our common experience that people frequently go online. There's nothing on the review itself that says the star rating comes from a survey. Is there? That's correct. So the star was based on the survey from pairing this with the process state. No, Your Honor. Standing on its face. We made two arguments. One was that there was a false implication of fact that people would read those ratings and understand them to be based upon client surveys. And that would be bolstered by the narrative, which, in fact, had survey review doesn't say that it's got a lot of narrative and then it has quotes. And so maybe the quotes are made up, but I'm not sure I understand how much of this is based on survey apart from the, you know, the process state. The argument we made to the jury that we believe the jury agreed with is that when consumers go to websites and see ratings, it is presumed that those are ratings are based upon information by somebody who's actually experienced the product. But that's not actually what the jury found specifically. The jury found specifically that there that the claim of basing the review on surveys from former clients was false. So it's it's a it's a process falsity, which which isn't a finding that the substance was false. Absolutely. And I don't understand why there there's a necessary correlation between the two. The process falsity and the substance falsity that you're arguing for. Let's see if I can put it this way, Your Honor, that if, in fact, somebody at the fix, one of the defendants had found one person, five people, 10 people, it doesn't matter how many to say that passages was terrible. Then they can represent on the passages website that it was terrible and they can give quotes about its terribleness. But the undisputed evidence was that the fix looked for notes, surveys, witnesses, information and had absolutely no evidence whatsoever that anybody from passages had ever rated its services terrible. When did that happen? When did they make that inquiry and discover that? The inquiry was made by the editor in chief in 2016, and it was prompted by an inquiry by passages about why its review remained up. Passages had been told by a fixed employee named Dean Kramer that the review was utter nonsense and that it would be taken down. And that started the inquiry from passages prior to that point where they make that inquiry and that discovery. Do they have any liability for the statements they inherited? We believe that they do. From the moment that they maintained what we contend is an advertisement, they need to have some sort of substantiation for the claim made in the advertisement. Certainly by 2016 when they knew it was false. When they walk out of the bankruptcy court having purchased the fix, at that point does the Lanham Act liability begin? Well, I don't know if the Lanham Act liability begins in terms of what we're going to get to later. I believe the latches argument because passages didn't know that this was a commercial advertising by their competitor. But certainly, did the conduct inviolate, were they violating the Lanham Act from the moment they purchased it? I believe maybe in equity the law would permit them some time to go through their records to see whether or not the review of passages was substantiated. But certainly at some time soon after their purchase, particularly given the number of inquiries by passages about taking down the review, put them on notice that there was something wrong with it. Again, it was as early as 2014 when one of its own employees declared that he knew it was utter nonsense. So certainly, and we had the editor-in-chief back in 2014 who admitted that his boss Richard Tate, one of the defendants, was manipulating the ratings. There's a lot of evidence from 2014 suggesting that the defendants did not take seriously whether or not there had been surveys and didn't care because of their comparative advertising scheme. Which is to use their own inflated rating of five stars and to superimpose that or place it right next to the one-star rating for passages. In fact, the jury saw a number of emails where Cliffside touted its ability to take customers from passages merely by telling these customers they should go to a website, Google the name of passages, and see what comes up on the fix. Which comes to an important point that I think the district court missed. 192,000 people, 192,000 customers came to this passages review page during the period of time that it was maintained by defendants. These were not 192,000 passive customers in the way that somebody might be watching a television show and a commercial comes on and people aren't paying attention to it, they're not interested in it. Google analytics showed that how people came to the fix, what search terms they would put into their browser to reach the fix. The number one search term was the fix, number two was passages. So why were these people putting passages so frequently in the browser is because passage is the brand in this space. Passages spent tens of millions of dollars on advertising, mostly television advertising, so people would know the passages name and passages brand and come to passages. And what the defendants did is use the passages advertisement, suggesting that its own clients gave it one star, when in fact that was false. And then they would superimpose or put next to it their five star rating. With that background, I want to turn briefly to the trial courts orders. The trial court did not let passages proceed on its damages claim. I think it's because the trial court believed that causation expert, there must be a causation expert, that testimony of causation must come from an expert. In excluding Dr. Williams, plaintiff's economist, the district court said that he was not an expert on causation because he didn't have experience in the addiction treatment field. In fact, many decisions from this court recognize you don't need an expert in causation. The district court compared this case to a toxic tort case. And of course, it should be undisputed that in a toxic tort case, that a jury can't be expected to have common knowledge of how chemicals affect the body and cause harm. Here, on the other hand, I'm sorry, I've lost audio, I believe. Can you hear me? I can hear you now, Judge Graper, thank you. Okay, I think we just were all being quiet, but I will ask you this. It does appear that Dr. Williams had some assumptions about damages that were potentially faulty. He doesn't account, for example, for the marketing strategy of other facilities. He doesn't account for the lawsuit and the negative publicity that flowed from a lawsuit unrelated to this where a patient had died at the facility. There are a number of things that he just simply didn't take into account at all, because the injury must flow directly in a Lanham Act case from the falsity. So why wasn't the district court permitted to say, I don't see how these things flow directly? I believe the jury should have been able to make that decision. Defendants could have cross-examined the expert. But the district court didn't rule irrationally. An issue does not have to go to a jury just because the parties want it to go to a jury if the evidence is insufficient to permit a rational finding by the jury on a point. And basically the court said no jury could come to a rational conclusion about what flows directly from these falsehoods. And I guess what I'm trying to figure out is whether you think Dr. Williams did in fact show what would flow directly. Your Honor, if in fact that were the standard in a Lanham Act case, then or a Cartwright action case or antitrust cases, you would never have a regression analysis. A regression analysis can never account for every conceivable variable. No, but it ought to account for things that could really make a big difference. And I think that's what the district court was concerned about. And I agree, Your Honor, if in fact there was evidence of an element that really could be expected to make a big difference, an affirmative expert opinion saying this is a really important causal factor. Now, I still think that would go to a jury and explain to a jury, but it's possible under the circuit's authority that the judge could say that that variable and the evidence for that variable is so powerful that the evidence that failing to account for it disqualifies the expert. But there was no such evidence of such a powerful causal factor in this particular case. The jury that you can't that the district court is without power to preclude an expert from testify unless there's a contrary expert already there. Absolutely. It's similar to a toxic tort case, for example, which the trial court compared this to where you have a defendant say, well, it could have been this. It could have been that it could have been some other thing. And what the courts are insisted upon, I believe, is some sort of evidence, not just speculation, but hard evidence that the expert has not accounted for the variables that a reasonable expert would account for. And in fact, Dr. Williams explained, for example, why the publicity of the before and after the publication of this website should be presumed to be equal. I mean, how does one actually weigh the effect of publicity? The district court's position in essence would always deprive a Lattimax plaintiff like my client of the ability to recover damages. OK, counsel, you have actually used up all your time, but we asked a few questions. So when the time comes, you may have a minute for rebuttal. Thank you, Your Honor. And so we will hear now from Mr. Stris, if I pronounced that correctly. You did. You did, Your Honor. Good afternoon and may it please the court. Peter Stris on behalf of the defendants at police. I'd like to begin with what Lattimax claim was actually tried to the jury because what my friend from representing passages tells you is demonstrably false. So in this case, there are two alleged false statements. There is something called a mission statement, which you'll find at S.R. 81. It's no longer an issue in the case. Then there's something called a process statement, which you'll find at S.R. 75. And the process statement makes representation about how the star ratings on the various reviews are calculated. It says that survey that center owners get to distribute surveys to their alumni. And then based on those surveys, star ratings come out. Now, Mr. Levin tells you that the first and in his briefs, he says that the first question that went to the jury wasn't about the process statement, which only a few hundred people saw, but rather was about the review itself. That is totally false. And I'd like to walk through the record and explain why. So a special verdict form was given to us before passages closing. You'll find that at F.R. 14 to 17. It had only two liability questions. One is about the process statement. One is about the mission statement. That's not surprising because that's what was litigated the entire case. We filed many motions throughout the case, claiming that if they were arguing about the review, that would not be actionable for a host of reasons. I then argued after Mr. Levin's closing that the process statement claim should be time barred. And the reason I argued that is because the process statement, as I mentioned a moment earlier, says that the owners of the center will distribute the surveys. And passages admits that from the minute that statement was up, they knew it was false because they knew that they didn't select alumni to give them surveys. So in response, sua sponte, the judge divided that question, the process statement question, into two. And you don't need to take my word for it because it's in the record. If you look, that's at F.E.R. 7 to 9. There's a colloquy between me and the judge where he says I divided what was one question before into two because of time bar issues. So I want to just put that out on the table because it's really important. A lot of things flow from the fact that the only thing that was alleged to be false here was the. What's your response to his comment in response to my question that the review itself does recount responses reviews from alums that they contend are false and made up? No, no. My response is they never litigated that. They never argued that because I was kicking and screaming at every point that if that was their argument, we didn't write this. It's something that was written before. We never changed a word. And so we had a host of arguments about successor liability, and they disclaimed that argument. And I can give you quotes from the court's order. Not focus on what the lawyers argued. I want to make sure we're understanding what the jury found from the special verdict form. Because to me, it's immaterial, necessarily. You will argue there was there was a finding in this case against your client based upon the process statement, correct? Yeah, that's correct. OK, and what do you understand was the specific finding from the jury? Was it not that the fix falsely advertised that the review of the of passages on the fixes website was based on surveys from former clients and passages? Is that what they found? That's what they found. So why wouldn't that find necessarily implicate the quality of the review itself? Why would we necessarily focus just on the nature of how the survey or the review was obtained? But the argument is obviously the quality of the review itself and what it means is demonstrably undermined based upon the process. So the process is not somehow distinct from the quality of the review, but it's actually part of you. Otherwise, it wouldn't be false in the context of the landmark. So why wouldn't we focus on that rather than what you are arguing was litigated? So I don't disagree with anything you said, except that there are specific legal implications on questions of causation throughout the case. From when you on this issue, because if only a few hundred people saw the process statement and therefore understood the review to mean that it was based on surveys, that's very different than trying to say 200000 people saw the review. If in fact, Judge Boulevard, the quotes are true, the quotes happened. We never had an opportunity to litigate that. And we would have the issue that was presented and decided by the jury was whether the process was false. So with that said, let me turn to some of the legal issues that flow from that. And I would like to begin with the exclusion of passages. Damage is expert. So both Dr. Williams and passages council told the court that he would not testify about causation. But Dr. Williams intended to testify that his regression showed that our clients false advertising. And this goes to our party. Answer your question. Was the sole cause of sixty five million dollars in lost lost profits. He was excluded because he was trying to present misleadingly and assumed facts damages model as causation. So let me ask this question. Council regression analysis necessarily involves choice of variables. Yes. Right. Regression now necessarily involves confidence intervals about to what extent the differences in the data are explained by the model. I don't see anything in here that says that the methodology itself in terms of regression analysis was incorrect. That there wasn't multicollinearity. There wasn't linear dependence. There wasn't the types of methodological and fundamental problems that would challenge the model itself. What I see and I see from the district court are challenges to the choices as it relates to variables which are inherent in regression analysis. The regression analysis necessarily requires choices of variables. That's why you have these different measures and coefficients to determine whether or not the model itself work. I don't see anything in here from a from a from the district court judge's opinion that would somehow suggest that the model itself of the methodology in terms of regression analysis itself was incorrect. What I see are choices about variables. So let me finish. But that that would based upon our case law go to issues about the weight of the model and whether or not it's persuasive. So why wouldn't we reverse on the fact that there was there is no explicit finding that goes to the actual regression methodology which would deal with the statistical modeling itself. Okay, so let me take the question on directly. What Dr. Williams offered here was exceptional. It's the type of regression that the Supreme Court in Baysmore labeled quote so incomplete as to be inadmissible as irrelevant. Now I appreciate that there's a line beyond which it's an abuse of discretion for a trial court to exclude. But there are many cases that find regressions that fail to control for any pertinent confounding factor to be irrelevant. That's what happened here. Question. How do we know that in fact what the district court judge thought was pertinent actually was pertinent in the model. That's why you have rebuttal experts. The fact of the matter is Dr. Williams assumptions could very well have been borne out by other modeling. Right. But there's no we don't have any statistical model here that actually says that the assumptions are in fact incorrect from a statistical modeling standpoint. So I want to know why would we then accept that when we don't have a counter model of regression that would actually show that in fact that publicity mattered. We don't have anything like that here. It's very important that I that I explain the facts on the record on this because I appreciate your question. But this really is an exceptional case. So this is a case where Dr. Williams did not choose variables that we then disputed. He chose no variables. And let me explain what I mean by that. First he showed up and he said I'm not testifying about causation. That's a red flag when an expert says I'm not testifying about causation that maybe he didn't consider confounding factors. Next your honor his report didn't attempt to address any confounding factors. Let me explain what I mean by that. If you assume that nothing else impacted passages business anything that happened in 2011 the Fukushima nuclear disaster in Japan would have accounted for 65 million dollars in lost profits. Now I get your question. I get your point. If he had said well I considered a couple of other things that were possible and I didn't think that they were significant. Then we're in the world of oh maybe it's an abuse of discretion because it goes to weight and not admissibility. That's not what happened here. How many variables how many variables did he include in his model? Zero that were confounding factors. I'll show you where they are. Hold on. How many variables without your qualification were considered in the model that he presented? Six. They're at 220 to 221 of the record. I'd like so you can look at them and they are things like the real GDP of the United States the CPI of the United States the recession that happened ahead of time. So in other words it's not a confounding factor because it's not in the in the after period. None of those are confounding factors. Now what what would be a confounding factor? Well and this is a critical point because of what he wrote in his report your honor. He was presented after his deposition with horrifying post 2011 publicity. Horrifying. If he had said in his report I considered publicity and I didn't think it was statistically significant. Maybe we could be having this argument that we're having right now. But what he wrote in his report is from at least as early as 2009 to the present. Other than this review there has been no additional negative publicity. It's because he wasn't doing a causation analysis. He was he was asked to assume things and calculate what the damages would be. I'll give you another example. If you go look at his model and this is very important. He picks a profit margin from prior to 2011 as his estimate. And then he says I'm going to assume for the but for forecasting period the same the same profit margin. Okay that's reasonable. That's the experts do that. But we pointed out to him again at the 11th hour. You know he didn't discuss this. That in 2011 the very period where the break is in his model passages fundamentally changed their business model. And started accepting a massive number of lower profit insurance clients. He and so. But I know that you guys will continue this conversation indefinitely. But I have a question on another matter that I'd like to raise before your time is up. And that has to do with costs. And it appears that the judgment was entered in favor of passages on the false advertising claim. But that's not exactly true. Sorry. Well I'm reading from it. Partially partially in our favor and partially. Right. Okay. But may I. I'm sorry I apologize. The question is whether the post hoc rationalization that the district court gave about costs was sufficient. The court discussed fees and gave a long explanation about the decision on fees. But then later simply said oh yeah I guess I meant costs too. Is that sufficient as an explanation. And. Thank you from there. So the short answer to be perfectly honest Judge Graber is I don't know. On his fee award. Clearly his finding that this is not an exceptional case was not an abuse of discretion and was right with regard to costs. Both sides moved for costs and both sides made arguments that we were entitled to costs. And I haven't considered carefully the question you ask as to the level of discretion and detail that a judge needs to give in choosing to deny costs to both sides. Well it was confusing because the judgment as you note is partially in favor of the plaintiff and partially in favor of the defendants. But that wasn't the rationale given about not awarding costs. That's why I was asking the question because I don't see a real explanation. Yeah. I appreciate that. I wish I had something else to offer. I mean we had a rule 68 offer that also we put out that was successful and that wasn't addressed. So they're definitely on the cost issue. There's some confusion but I don't know that I have much that I could add to that. So you would agree with Judge Graber I think that essentially in terms of the separate standard and evaluating the costs it really wasn't elaborated fully by the district court as it relates to a scenario of the award of costs here. I think I would agree with that. On the discouragement issue why shouldn't that go back to the plaintiff? I couldn't hear your question Judge Collins. As to the discouragement issue why shouldn't that go back in light of the change of the law in Roanoke? So Judge Collins here's our position on that. We think it's just an antecedent point just briefly. We think it was clearly not an abuse of discretion to find that passages didn't meet its burden to prove with certainty what the profits were. So that gets us to the zero to $60,000 range. And the reason we think a remand isn't necessary is because Judge Wilson said he would award $60,000 if his willfulness finding were overturned. But that's if his finding of no willfulness were overturned and a finding of willfulness were made. But he never said what the world would be and what his ruling would be in a world where willfulness wasn't required and wasn't found. But it would have to be under $60,000 though because he goes into great detail to explain that none of the measures that passages puts forth establish causation. So they did not prove an amount of profits or discouragement. He used his equitable discretion to pick $60,000. So if your point is in a post-Romag world, might he choose something between zero and $60,000 even absent willfulness? We don't read his order that way. But if you do, we ask that you vacate and enter judgment for his alternative of $60,000 because he made clear that that's the most that passages could possibly get in his discretion under the Lanham Act. I see that I'm over time. You are over time. Thank you very much. And Mr. Levin, you may have that extra minute on your side. I appreciate it, Your Honor. First of all, with respect to the issue of whether the review alone was the focus or a focus of plaintiff damages case, I would refer the court to R-90 of the record. R-90 of the record was the district court's ruling on summary judgment motion because the argument that defendants now make that this was all about the process statement and all about the mission statement, they made that motion on summary judgment. And at R-90, the district court denied the motion and said passages can proceed on damages claim for the review alone. The second point I'd like to make, and this has to do with whether Dr. Williams looked at bad publicity. He did. I refer the court to R-143 to 150 of the record. That's his testimony. He said he looked at the publicity and found they were statistically insignificant. Thank you, Your Honor. Unless there's additional questions that I can answer. Thank you, counsel. The case just argued is submitted and we thank both counsel for a spirited and interesting conversation about this challenging case. With that, we are adjourned for this afternoon's session.
judges: Graber, Boulware, Collins